UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARRY E. WINDEKNECHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:20-CV-293 JAR |
| ) | |
| MISSOURI DEPARTMENT OF MENTAL ) | |
| HEALTH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the amended complaint of self-represented plaintiff Larry E. Windeknecht. ECF No. 7. Plaintiff has also filed two motions for appointment of counsel and a second motion for leave to commence this action without prepayment of the required filing fees or costs. ECF Nos. 4, 8-9. Because the Court has already granted plaintiff leave to proceed without prepayment (ECF No. 5), plaintiff's second motion will be denied as moot. After reviewing plaintiff's amended complaint, the Court will dismiss this case for failure to state a claim upon which relief may be granted. As such, plaintiff's motions for appointment of counsel will be denied as moot.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which

is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a *pro se* complaint under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the *pro se* plaintiff that assumed facts that had not been pleaded).

**Background**

I.     Plaintiff's Legal History

Plaintiff Larry E. Windeknecht is a civilly committed resident at the Southeast Missouri Department of Mental Health in Farmington, Missouri. Plaintiff was declared a sexually violent predator under Missouri's Sexually Violent Predator Act, Mo. Rev. Stat. §§ 632.480 – 632.513, in April 2018 by a unanimous jury verdict in Cape Girardeau, Missouri. ECF No. 7 ¶ 9; *In re Larry Windeknecht*, No. 16CG-PR00247 (32nd Jud. Cir., Aug. 25, 2016).

According to Missouri Case.net, the State of Missouri's online docketing system, plaintiff (Missouri inmate no. 149121) was incarcerated with the Missouri Department of Corrections

prior to his civil commitment.[1]  Plaintiff was sentenced to seven years after pleading guilty to attempted enticement of a child in May 2010.  *State v. Windeknecht*, No. 09JE-CR04532 (23rd Jud. Cir., guilty plea May 21, 2010).  According to plaintiff, he went directly from incarceration to detention as he "was never released from the Missouri Department of Corrections, but was instead transported to a county jail."  ECF No. 7 ¶ 12.

II.     Instant Civil Matter

On February 20, 2020, plaintiff filed an initial complaint in this matter, seeking relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 – 12203(a), and the Rehabilitation Act of 1973 ("RA").  ECF No. 1 at 2.  Plaintiff alleged violations of his civil rights against three defendants: (1) Missouri Department of Mental Health ("DMH"), Sex Offender Rehabilitation and Treatment Services ("SORTS"); (2) nurse Kathy Hammond; and (3) Bill Anderson.  *Id.* at 1.  Subsequently, on April 2, 2020, plaintiff filed a motion to amend the complaint.  ECF No. 3.

On May 19, 2020, the Court issued an order granting plaintiff's request to proceed without prepayment of fees and costs, waiving the filing fee.  ECF No. 5.  In the same Order, the Court granted plaintiff's motion to amend and gave him thirty (30) days to file an amended complaint on the court-provided form and in compliance with the Court's instructions.  *Id.*

---

[1] The Court notes that plaintiff – while incarcerated on criminal charges – filed more than three actions that were dismissed as frivolous or for failure to state a claim.  *See* 28 U.S.C. § 1915(g); *Windeknecht v. Korpecki*, No. 4:96-CV-1600-TCM (E.D. Mo. Aug. 9, 1996) (dismissed Dec. 9, 1996); *Windeknecht v. Mettes*, No. 4:96-CV-1634-CEJ (E.D. Mo. Aug. 14, 1996) (dismissed Dec. 16, 1996); *Windeknecht v. Boyd*, No. 4:96-CV-1869-FRB (E.D. Mo. Sept. 18, 1996) (dismissed Jan. 6, 1997); *Windeknecht v. Brunner*, No. 4:96-CV-1870-CDP (E.D. Mo. Sept. 18, 1996) (dismissed Feb. 26, 1997); *Windeknecht v. Wiseman*, No. 4:96-CV-2088-MLM (E.D. Mo. Oct. 22, 1996) (dismissed Feb. 3, 1997); and *Windeknecht v. Alizadeh*, No. 4:98-CV-671-ERW (E.D. Mo. Apr. 17, 1998) (dismissed July 17, 1998).
However, because plaintiff is now civilly committed as a sexually violent predator, he is no longer a "prisoner" as defined under 28 U.S.C. § 1915(h).  As such, the "three-strikes" provision of the Prison Litigation Reform Act ("PLRA") does not apply to him.  *Merryfield v. Jordan*, 584 F.3d 923 (10th Cir. 2009); *Troville v. Venz*, 303 F.3d 1256 (11th Cir. 2002); *Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000); *see also Kolocotronis v. Morgan*, 247 F.3d 726 (8th Cir. 2001) (finding mental patient not a "prisoner" under PLRA).

On June 5, 2020, plaintiff filed a letter with the Court attempting to clarify that his motion to amend (ECF No. 3) was intended as a request to file a "supplemental complaint." ECF No. 6. Plaintiff explained that he just wanted to add three new defendants and not file an entirely new complaint. However, one week later, plaintiff filed a new complaint, naming additional defendants and restating all his legal allegations. ECF No. 7. Attached to that filing was a letter stating that the filing was "a complete new copy of the complaint" that includes all defendants' names in the caption. ECF No. 7-3 at 1. As such, the Court will disregard plaintiff's letter requesting to withdraw his motion to amend and consider the newly filed complaint (ECF No. 7) as the amended complaint that the Court previously granted plaintiff permission to file.

## The Amended Complaint

Plaintiff names six defendants in the caption of his amended complaint: (1) Missouri Department of Mental Health ("DMH"), Sex Offender Rehabilitation and Treatment Services ("SORTS"); (2) Kathy Hammond (nurse); (3) Patricia Koppeis (nurse); (4) Bill Anderson; (5) Charles McIntyre (patient coordinator); and (6) Joe Easter (nursing manager).[2] ECF No. 7 at 1. Plaintiff brings official capacity claims against DMH-SORTS and both individual and official capacity claims against the five individual defendants. *Id.* ¶ 3.

Plaintiff titles his amended complaint as an "Americans with Disabilities Act Civil Action Pursuant to 42 U.S.C. §§ 12132 – 12203(a)." ECF No. 7 at 1. However, in the "Jurisdictional Statement" section of the amended complaint, plaintiff specifies that his complaint is not only brought under the ADA but also under the "Rehabilitation Act of 1973, 18 U.S.C. § 791(a) and 42 U.S.C. § 1311(3)." *Id.* ¶ 4. Although plaintiff divides his amended

---

[2] Plaintiff lists these defendants in the caption of his complaint and the words "et al." *See* ECF No. 7 at 1. Under Federal Rule of Civil Procedure 10(a), the caption's "title of the complaint must name all the parties." Therefore, the Court will consider the six named defendants as the only defendants in this matter.

complaint into two counts of "Equal Protection Due Process" and "Failure to Engage," the counts contain many of the same allegations and are based on the same facts. *Id.* at 2-8.

Under his Equal Protection count, plaintiff states that he submitted a "team request" on January 2, 2020, to meet with an on-site ADA coordinator. ECF Nos. 7 ¶ 6; 1-2. The request was referred to defendant unit manager Bill Anderson. When plaintiff did not receive a response within four days, plaintiff filed a second request on January 6, 2020. ECF Nos. 7 ¶ 7; 1-3. The second request was referred to defendant patient coordinator Charles McIntyre. Plaintiff alleges that McIntyre had not responded as of one week later (January 13, 2020). ECF No. 7 ¶ 7. Plaintiff asserts that Anderson and McIntyre failed to engage in the interactive process and that Anderson failed to hire, train, and supervise a qualified ADA coordinator. *Id.* ¶ 6-7.

In the second team request submitted January 6, plaintiff again asked to meet with an on-site ADA coordinator, but he also complained about a January 2, 2020, incident in which he alleges that he was denied access to the phone to make a "toll free 1-800" call. ECF Nos. 7 ¶ 8; 1-3; 1-4. Plaintiff was trying to contact a number "for a Class Action lawsuit … filed in respect to the medication of Zantac." ECF No. 1-4 at 1. Plaintiff states that "Aids" denied his request to make the call and then sought confirmation for their denial from nursing manager Joe Easter. ECF No. 7 ¶ 8. Easter stated that the call required "team request approval." *Id.* Plaintiff then asked Easter for the "Whistle Blower Hot Line" number. In response, Easter "acted as if he didn't know what [plaintiff] was talking about." *Id.*; ECF No. 1-5. Plaintiff asserts that he has the "legal right to call any toll free 1-800 number." ECF No. 1-3 at 2. Plaintiff states that Anderson's lack of action violates his "Equal-Protection and Due Process Guarantees."[3] ECF No. 7 ¶ 8. Plaintiff further asserts that nursing manager Easter failed to adequately train and

---

[3] The Court notes that plaintiff also states these same allegations against Anderson and Easter in his "Count II Failure to Engage" claims. *See* ECF No. 7 ¶¶ 22-23.

supervise defendant nurses Kathy Hammond and Patricia Koppeis, in violation of Missouri statutes pertaining to patient privacy rights and specifically, his right to reasonable access to the telephone to make and receive confidential calls.  *Id.*

Under his failure to engage count, plaintiff states that he has numerous medical conditions, including spinal stenosis, foraminal stenosis,[4] severe sciatic nerve damage, peripheral neuropathy, chronic sinusitis, COPD, allergies, spondylolysis,[5] and a shoulder injury.  ECF No. 7 ¶¶ 10, 16, 20.  Plaintiff asserts that these medical conditions result in severe chronic pain; serious difficulty breathing; severe burning of eyes, ears, nose and throat; and frequent infections.  *Id.* ¶ 10.  Plaintiff notes that he spends most of his time in bed because of severe pain in both legs, feet, back, and shoulder.  *Id.* ¶ 20.

Plaintiff alleges that he has been "denied medical care and effective treatment" for the last "four years to date" – which includes the approximate two years since he arrived at the Farmington facility in April 2018.[6]  ECF No. 7 ¶ 12-13.  Plaintiff states that there are "supposed to be" two primary doctors working at the Farmington facility, but that neither doctor sees patients and that plaintiff himself has never seen either of the doctors for his medical problems.  *Id.* ¶ 37.  According to plaintiff, the lack of effective medical care and treatment have caused him to suffer from: burning electrical shock, disrupted sleep, sensitive skin, equilibrium problems resulting in three falls, tingling feelings in his feet, severe cramping in both legs and both feet, and muscle weakness which makes it difficult to walk or stand for any period of time.  *Id.* ¶ 34.

---

[4] Plaintiff refers to this condition as "forminal stenosis."  ECF No. 7 ¶ 10.  However, an MRI exhibit from July 2013 spells the diagnosis differently, stating that "THERE IS MODERATE TO SEVERE RIGHT AND SEVERE LEFT NEURAL *FORAMINAL* STENOSIS."  ECF No. 1-9 at 1 (emphasis added).

[5] Plaintiff refers to this condition as "Spondythesis" (ECF No. 7 ¶ 16), citing an MRI exhibit dated July 29, 2013 which provides the diagnosis.  However, the MRI exhibit finds "SUGGESTIONS OF [indecipherable] *SPONDYLOLYSIS*."  ECF No. 1-9 at 1 (emphasis added).

[6] Plaintiff's allegations of inadequate medical care for the two years prior to arriving at the Farmington mental health facility (ECF No. 7 ¶ 18) will not be considered here because no named defendants in this suit were responsible for his care during that period.

Plaintiff asserts that the facility and named defendants have denied him services that he is entitled to as a U.S. Citizen and services that they are required to provide since they receive matching funds from the federal government. *Id.* ¶ 13-14.

According to plaintiff, the Farmington facility is "not functionally serviceable" under the ADA. *Id.* ¶ 15. First, plaintiff asserts that he needs to be able to soak in a hot salt-water bath for 30-45 minutes a day due to the peripheral neuropathy in his feet and legs. However, the Farmington facility only has showers. *Id.* ¶¶ 15, 38. Plaintiff complains about having to stand for prolonged periods of time and not being able to sit down while taking a shower. He also complains that for an approximate five-month period, he had to walk to a different part of the building just to take a shower. *Id.* ¶ 38. Second, plaintiff asserts that he has not received proper or effective pain medications, specifically complaining about only being given over-the-counter pain medications. *Id.* ¶¶ 18-19, 31. However, plaintiff admits that he was prescribed Tramadol briefly for pain. Plaintiff alleges that defendant nurses Hammond and Koppeis discontinued the Tramadol, but later he states that the prescription expired, and Hammond stated it could only be renewed by a primary doctor. *Id.* ¶¶ 19, 35-36. Third, plaintiff asserts that his numerous requests for COPD breathing treatments and for use of a fan, have been repeatedly denied. *Id.* ¶ 24. Fourth, plaintiff claims that his requests for a "Tens Unit"[7] for treatment of his stenosis and neuropathy, have been ignored. *Id.* ¶ 25.

According to plaintiff, he was diagnosed with spondylolysis by a prison doctor in 1995 or 1996. *Id.* ¶ 16. After the disease progressed, he had an MRI in July 2013 which found foraminal stenosis and "suggestions" of spondylolysis. *Id.* ¶¶ 16-17; ECF No. 1-9 at 1. After this MRI,

---

[7] Plaintiff does not elaborate on his "Tens Unit" request except to refer to an unlabeled exhibit number. *See* ECF No. 7 ¶ 25. However, on a grievance filed by plaintiff on January 15, 2020, he requests a "Tens Unit for sciatic nerve damage." ECF No. 1-7 at 1. The Court assumes plaintiff is referring to "TENS, or transcutaneous electrical nerve stimulation … a back pain treatment that uses low voltage electric current to relieve pain." *See* TENS for Back Pain, https://www.webmd.com/back-pain/guide/tens-for-back-pain (last visited August 12, 2020).

plaintiff alleges that he was told he needed back surgery. ECF No. 7 ¶ 17. It does not appear from the record that plaintiff ever had such surgery.

Plaintiff further alleges that he was refused hot meals on the ward – even though other patients were receiving hot meals at the time – due to orders given by defendant nurse Koppeis from around March 2019 to August 2019. *Id.* ¶¶ 21, 32. Plaintiff asserts that he was denied "360 plus" meals over this five-month period because he was "unable to walk to the Blair building, climb[] stairs, and [withstand] prolonged sitting." *Id.*

For relief, plaintiff seeks both injunctive relief and monetary damages. ECF No. 7 at 8-9. Plaintiff seeks an injunction requiring that DMH provide: a hot, salt-water bath every morning; a shower that he can sit down in; pain medications that are not over-the-counter medications; a Tens Unit; breathing treatments for COPD and chronic sinusitis; Visine, nasal spray, and a fan. *Id.* ¶ 40(a)-(b). He also would like to change housing assignments to a ward "where (ADA) objectives can be met" and he wants to be exempt from monthly fire drills. *Id.* In addition, plaintiff seeks $100,000 in compensatory damages. *Id.* at 13.

**Discussion**

Liberally construing the allegations of the complaint, the Court notes that many of plaintiff's claims seem to be complaints about the conditions of confinement at the Southeast Missouri Department of Mental Health facility in Farmington, Missouri. Such conditions-of-confinement claims are normally brought under 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). However, here, plaintiff specifically stated in his initial filing that he did not intend for this suit to be brought under 42 U.S.C. § 1983, and as such, he is not required to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). *See* ECF No. 1-1 at 1. Instead, plaintiff seeks relief under the Americans with Disabilities Act ("ADA")

and the Rehabilitation Act ("RA"). However, the Court finds that the allegations of the amended complaint fail to state a claim for relief under the ADA or the RA.

Plaintiff's ADA claims fall under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides the same rights, procedures, and remedies against discrimination by recipients of federal funding as Title II of the ADA. *I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, 863 F.3d 966, 972 (8th Cir. 2017). Although there are some differences between these two statutes, according to the Eighth Circuit, the statutes should be construed the same and case law interpreting either statute is generally applicable to both. *Durand v. Fairview Health Servs.*, 902 F.3d 836, 841 (8th Cir. 2018).

Title II of the ADA only applies against "public entities." 42 U.S.C. § 12132. As relevant here, under 42 U.S.C. § 12131(1), the term "public entity" means "any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government." The term "does not include individuals." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999); *see also Randolph v. Rogers*, 253 F.3d 342, 348 (8th Cir. 2001) ("[T]he public-entity limitation [of Title II of the ADA] precludes ADA claims against state officials in their individual capacities."). In addition, these individuals do not become a "public entity" under Title II merely by contracting with a governmental entity to provide governmental services. *See Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006). As a result, neither the ADA nor the RA imposes individual-capacity liability on defendants Kathy Hammond, Patricia Koppeis, Bill Anderson, Charles McIntyre, or Joe Easter. Plaintiff's

ADA and RA claims against these five individual defendants, in their individual capacities, fail to survive initial review under 28 U.S.C. § 1915.

Furthermore, the Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as by citizens of another state. U.S. Const. amend. XI. Defendant Missouri Department of Mental Health ("DMH"), Sex Offender Rehabilitation and Treatment Services ("SORTS"), is a division of the state of Missouri. The Eighth Circuit has held that Title II of the ADA does not abrogate a state's Eleventh Amendment immunity from private suit in federal court. *Alsbrook*, 184 F.3d at 1009-10. However, subsequently, the United States Supreme Court held that Title II of the ADA abrogates a state's sovereign immunity in limited circumstances. For example, in *United States v. Georgia*, the Supreme Court held that Title II of the ADA validly abrogates a state's sovereign immunity when the conduct alleged actually violates the Fourteenth Amendment. 546 U.S. 151, 159 (2006). To determine whether Title II validly abrogates sovereign immunity in a given context, the Court must "begin [its] analysis by identifying the precise nature of the claims before [it]." *Klingler v. Director, Dept. of Revenue, State of Mo.*, 455 F.3d 888, 893 (8th Cir. 2006).

Here, plaintiff asserts he is being denied adequate medical care and treatment and that defendants have failed to engage in the interactive process in order to attempt to remedy the problem. Similar to the plaintiff in *United States v. Georgia*, plaintiff here claims that the conditions of his civil commitment violate not only the ADA, but also his Eighth Amendment right to be free from cruel and unusual punishment (a right made applicable to the states by the Due Process Clause of the Fourteenth Amendment). Because plaintiff alleges violations of the Fourteenth Amendment, plaintiff's ADA claims against DMH-SORTS and the other named defendants, in their official capacities, are not subject to dismissal under Eleventh Amendment immunity. *Georgia*, 546 U.S. at 159 (noting that "Title II [of the ADA] creates a private cause

of action for damages against the States for conduct that actually violates the Fourteenth Amendment, [and thus,] Title II validly abrogates state sovereign immunity."); *Randolph*, 253 F.3d at 348 (noting that Supreme Court precedent "permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law") (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

Despite this, plaintiff's allegations against DMH-SORTS and individual defendants in their official capacities are subject to dismissal for failure to state a claim upon which relief may be granted. Title II of the ADA prohibits public entities from discriminating based on disability in their provision of services, programs, or activities. To state a prima facie case under the ADA and RA, plaintiff must allege: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against based on his disability. *M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn.*, 439 F.3d 865, 867 (8th Cir. 2006); *see also Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020). Additionally, in order to establish a RA violation, plaintiff must also show "bad faith or gross misjudgment." *M.P.*, 439 F.3d at 867.

Here, plaintiff alleges that defendants violated the ADA and RA in that they denied him access to the phone to make confidential calls to 1-800 numbers, denied him a meeting with the on-site ADA coordinator, and denied him adequate medical care and treatment. Assuming without deciding that plaintiff is a qualified individual with a disability under the ADA, plaintiff has not argued or asserted any facts suggesting that he was excluded from participation in, or denied any benefits, due to discrimination based on that disability.

Plaintiff alleges he was denied access to the phone to make a 1-800 call because he had not submitted a team request and complied with the facility's rules for phone calls. Nothing alleged in plaintiff's complaint indicates he was denied the phone call due to a disability.

Furthermore, the Eighth Circuit Court of Appeals previously considered the rights of involuntarily committed persons as to telephone usage in *Beaulieu v. Ludeman*, 690 F.3d 1017 (8th Cir. 2012), finding that there is no right to unrestricted phone use.[8]

Plaintiff also argues that the defendants failed to engage in the interactive process. "To determine whether an accommodation for the [plaintiff] is necessary, and if so, what that accommodation might be, it is necessary for the [parties] to engage in an 'interactive process.'" *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009) (internal citations and quotations omitted). To show that a defendant did not engage in an interactive process, plaintiff must prove: 1) the defendant knew about the plaintiff's disability; 2) the plaintiff requested accommodations or assistance for his disability; 3) the defendant did not make a good faith effort to assist the plaintiff in seeking accommodations; and 4) the plaintiff could have been reasonably accommodated but for the defendant's lack of good faith. *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 906 (8th Cir. 2015).

Here, the facts alleged in plaintiff's amended complaint do not demonstrate that defendants have failed to make a good faith effort to accommodate plaintiff's requests. Plaintiff asserts that he has requested to meet with an on-site ADA coordinator and that his requests have been ignored and/or denied. However, the Court notes that plaintiff does not seek this meeting as relief in the 'Request for Relief' section of his complaint. ECF No. 7 at 8-9. Regardless, based on the exhibits attached to the complaint, it appears that defendants have made an effort to accommodate this

---

[8] "Any form of involuntary confinement, *whether incarceration or involuntary commitment*, may necessitate restrictions on the right to free speech." *Martyr v. Bachik*, 755 F.Supp. 325, 328 (D.Or. 1991) (emphasis added) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)). In the prison context, we have concluded that "the extent of inmates' First Amendment right to communicate with the outside world is a fact-intensive universe." *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2012). "A prisoner has no right to unlimited phone use." *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1989). This means that "[a]lthough prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use." *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992).
*Beaulieu v. Ludeman*, 690 F.3d at 1038-39.

request. Some of plaintiff's grievances and requests were referred to "SORTS ADA" Crystal Mace. ECF Nos. 1-6 at 1 (stating in Referral Response that "SORTS ADA is Crystal Mace"), 1-16 at 1 (response signed by "Crystal Mace, Title VI Officer."). On January 15, 2020, plaintiff described his request to meet with an ADA coordinator as only "recently" made; and six days later, plaintiff admits to having met with Crystal Mace to discuss his request to use a tub and his request for hot meals on the ward. ECF Nos. 1-7 at 1; 7 ¶ 29; 1-16. Although, plaintiff states that he asked Mace if she was an on-site ADA coordinator and Mace replied that she was not, Mace was labeled as the "SORTS ADA". ECF No. 7 ¶ 29; 1-6 at 1. The facts alleged do not suggest a lack of good faith effort on defendants' part to accommodate plaintiff's request.

As for medical care, plaintiff seeks access to a bathtub (or shower with a seat), stronger pain medications than over-the-counter medicines, use of a TENS unit, breathing treatments for his COPD, and use of a fan for air circulation. Assuming without deciding that these items would qualify as being "denied the benefits of the services, programs, or activities of a public entity" under Title II of the ADA, there are no facts alleged that support either that plaintiff was denied these things due to an alleged disability, or that defendants have failed to make a good faith effort to assist plaintiff in seeking them. Exhibits filed in support of the amended complaint indicate that plaintiff himself refused medical care and treatment at the Farmington facility. ECF No. 7-1 at 1 ("Review of your record also notes that you have refused an MRI and referral to orthopedist for spinal stenosis."). Many of the exhibits also indicate that plaintiff was prescribed medications, that he received medical testing while at the Farmington facility, and that he received socks to reduce foot swelling. *See* ECF Nos. 1-14, 1-17 at 7-19; 7 ¶ 26. Although plaintiff alleges that he has not always received the prescription medications requested in the dosages he seeks, plaintiff has no right to his choice of medical treatments. *See also Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) (A prisoner's disagreement with medical staff's decision to offer him over-the-

counter medications, rather than prescription medication, does not constitute deliberate indifference); *Dulany v. Carnahan*, 132 F.3d 1234, (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.").

As for plaintiff's request for a tub to soak in every day, exhibits filed by plaintiff do not indicate that defendants have denied this accommodation. In fact, exhibits indicate that defendants have made a good faith effort to assist the plaintiff in seeking it. Less than a month before plaintiff filed this case, he was directed to discuss his tub request with his medical providers. ECF Nos. 1-16 (response dated January 22, 2020: "Regarding your request to use a tub, please submit a request to discuss this with the clinic and/or your treating medical staff so that they can write an order if they believe your condition requires this accommodation."). Furthermore, two months after filing this lawsuit, plaintiff filed a grievance at the Farmington facility complaining about nurse Hammond's attempt to discuss his medical complaints in the day room in front of other people. *See* ECF No. 7-1. In response to the grievance defendant McIntyre stated: "Without a medical consultation we cannot attempt to treat any of your complaints. Please attempt a medical consultation in the clinic so that we can attempt to address your complaints." *Id.* at 2. This evidence does not demonstrate a lack of good faith effort by defendants to engage in the interactive process.

Plaintiff also complains about a denial of hot meals in his ward for a five-month period, alleging that he could not walk to the cafeteria without being in pain due to his numerous medical conditions. However, exhibits attached to his complaint indicate that plaintiff was offered reasonable accommodations in the use of both a wheelchair and an elevator in order to help him get to the cafeteria more easily. ECF No. 1-17 at 29-30, 37. Plaintiff also admits in an exhibit attached to the complaint that he suffers from a "phobia" of not wanting "his back out in the open"

which "applies during meals or while eating around numerous others," such as in the cafeteria. *Id.* at 25-26. Plaintiff was not denied access to a service due to his disability. In fact, nurse Koppeis indicated that it would benefit plaintiff's health to get up and walk more. *Id.* at 25 ("Encourage walking to improve muscle for back."). Regardless, given that this complaint was only for a five-month period in 2019, it appears that this issue is now moot. Altogether, the facts alleged do not support an allegation of disability discrimination, nor a failure to engage in the interactive process.

Plaintiff fails to plead facts supporting a prima facie case of disability discrimination or failure to engage in the interactive process under Title II of the ADA or the Rehabilitation Act. As such, plaintiff's claims against the defendants are subject to dismissal under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint because the amended complaint fails to state a claim upon which relief can be granted. Plaintiff's claims are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2). A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that plaintiff's second motion for leave to proceed *in forma pauperis* [ECF No. 8] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that plaintiff's motions for appointment of counsel [ECF Nos. 4 & 9] are **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 14th day of August, 2020.

                                                _/s/ John A. Ross_
                                                **JOHN A. ROSS**
                                                **UNITED STATES DISTRICT JUDGE**